IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01976-MSK-BNB

RHODORA L. BLANKS,

Plaintiff,

v.

JOHN E. POTTER, Postmaster General, United States Postal Service,

Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on **Defendant's Motion for Summary Judgment** [Doc. #32, filed 10/26/07] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED and that summary judgment enter in favor of the defendant on all of the plaintiff's claims.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe her pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed.R.Civ.P., provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, the discovery and disclosure materials on file, and any affidavits the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 447 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II. UNDISPUTED MATERIAL FACTS[1]

The following factual statements are undisputed:

1. The plaintiff became a permanent employee of the United States Postal Service ("USPS") in 1997. *Motion*, Ex. 1, 10:5-17.[2]

2. The plaintiff was terminated from her USPS position in 1997. She filed a complaint of racial discrimination. In 2000, the Equal Employment Opportunity Commission ("EEOC") found that the USPS had racially discriminated against her. In December 2000, the EEOC ordered the USPS to reinstate the plaintiff. The plaintiff was reinstated and began working again at the USPS in March 2001. Id. at 10:16-13:2.

3. In November 2001, the plaintiff's right wrist was injured while working. Id. at 13:8-14:4. The plaintiff filed a Workers Compensation claim for that injury, which was accepted. Id. at 13:22-14:9.

---

[1]The plaintiff attempts to dispute many of the defendant's statements of undisputed facts with nonmaterial factual statements and/or unsupported factual statements. *Plaintiff's Response to Defendants* [sic] *Motion for Summary Judgment* [Doc. #45, filed 1/14/08] (the "Response"), pp. 3-10. These statements are not sufficient to create genuine factual disputes. Celotex, 447 U.S. at 324. In addition, the defendant cites to documents which are not properly authenticated. To the extent the plaintiff does not object to such documents, I include them in my analysis. The defendant on several occasions cites to portions of deposition testimony that do not support his factual statement or are not provided. I do not include in my analysis any factual statements which are not supported by the evidence.

[2]The labeling of the defendant's exhibits is extremely confusing. Although the defendant cites to his exhibits as A-1, A-2, A-3, etc., none of the exhibits are labeled in this way. To the contrary, the exhibits are marked only with the designations assigned to them during depositions --none of which match the A-1, A-2, A-3 system used by the defendant. The exhibit numbers as reflected in the Court's docketing system match the *numbers* of the exhibits as cited in the Motion, but the docketing system does not contain the letter "A." The plaintiff cites to her exhibits as A-1, A-2, A-3, etc., and the exhibits are clearly labeled as such. Therefore, I cite to the defendant's exhibits solely by the numerical designation found in the Motion and the docketing system, and I cite to the plaintiff's exhibits as A-1, A-2, A-3, etc.

4. The plaintiff was treated for her wrist injury by Dr. Lewis Oster. Id. at 18:17-20. The treatment included surgery performed in mid-August 2002. Id. at Ex. A-2, 13:14-17.

5. Dr. Oster released the plaintiff to limited work duty starting on August 27, 2002. Id. at Ex. 1, 18:11-23; Ex. 3, second consecutive page. He documented her light duty as limited use of her wrist and limited lifting and carrying of one pound. Id. at Ex. 1, 18:24-19:2; Ex. 3, second consecutive page.

6. On December 2, 2002, Dr. Oster again released the plaintiff to limited work duty with a restriction of lifting and carrying of five pounds. Id. at Ex. 1, 17:16-18:6.

7. In February 2002, the plaintiff's left elbow was injured while working. Id. at Ex. 1, 13:22-14:7. The plaintiff filed a Workers Compensation claim for that injury, which was accepted. Id. at 13:22-14:7.

8. The plaintiff was treated for her left elbow injury by Dr. Steven Danahey. Ex. 1, 15:19-16:22; Ex. 4. On October 23, 2002, Dr. Danahey released the plaintiff from his care for her left elbow with maximum medical improvement and no restrictions. Id. at Ex. 4, first consecutive page. Dr. Danahey noted that the plaintiff did not have any pain and that she had not been working because she chose not to work. Id. at second consecutive page.

9. On August 1, 2002, the plaintiff filed a Workers Compensation claim for an injury to her left knee. Id. at Ex. 2, 39:22-40:5.

10. The plaintiff was examined on August 1, 2002, by Dr. Mary Jo Jacobs. Id. at Ex. 1, 22:16-24; Ex. 5, fourth consecutive page. Dr. Jacobs documented that the plaintiff was ambulatory, id. at Ex. 5, fourth consecutive page, and restricted the plaintiff to eight hours sitting intermittently, 2 hours standing intermittently, and one hour walking intermittently. Id. at first

consecutive page. Dr. Jacobs stated that the plaintiff was able to return to work on August 6, 2002, for light work and that she could do desk work. Id. at fourth consecutive page.

11. On August 26, 2002, the USPS sent the plaintiff a letter notifying her that she had been absent without leave ("AWOL") from August 19, 2002, through August 26, 2002. Id. at Ex. 6. The letter was issued in error because a USPS employee failed to document that the plaintiff was taking leave under the Family Medical and Leave Act ("FMLA"). Id. at Ex. 7, first consecutive page. The plaintiff provided medical documentation to the USPS, and her absence was excused under the FMLA through October 14, 2002. Id. at Ex. 2, 12:6-24; Ex. 8. The USPS corrected its records to note that the plaintiff's absence from August 19 through 28 was an approved FMLA absence. Id. at Ex. 2, 9:8-11; Ex. 9.

12. On October 31, 2002, the plaintiff sent the USPS a letter complaining about the amount of her paycheck and various accountings of her leave categories. Id. at Ex. 12.

13. Fred Sunday, the USPS employee who assists in resolving payroll issues for all USPS employees in the Colorado/Wyoming District, investigated the plaintiff's concerns. Id. at Ex. 13. In response to the plaintiff's concerns, the USPS adjusted accountings to various pay periods and gave her a money order for $450.57. Id.

14. On December 13, 2002, the USPS sent the plaintiff a Modified Job Offer for work at the kiosk and sorting time cards in the Attendance Control Office. Id. at Ex. 14. The job was a seated position where she would watch a door and sort time cards into slots. Id. at Ex. 1, 24:7-24. The Modified Job Offer states that it requires 6-8 hours of continuous and intermittent standing and walking; 8 hours intermittent lifting of 0-5 pounds; 2-4 hours of intermittent stooping and bending; and 1 hour of intermittent kneeling. Id. at Ex. 14, second consecutive

5

page; *Plaintiff's Response to Defendants* [sic] *Motion for Summary Judgement* [Doc. #45] (the "Response"), Ex. 26, p. 2.[3]

15. The plaintiff declined the job offer by letter dated December 19, 2002. *Motion*, Ex. 2, third consecutive page. She stated that she had a pending Workers Compensation claim for a knee injury; she could not stand or walk for any certain length of time; and she could not stoop, twist or kneel at all. Id. She further stated that she was being asked to accept a step decrease. Id.

16. On January 16, 2003, the USPS sent the plaintiff another Modified Job Offer. Id. at Ex. 2, 48:18-22; Ex. 17. Dr. Oster, the plaintiff's wrist doctor, approved the Modified Job Offer. Id. at second consecutive page.

17. In response to the Modified Job Offer, the plaintiff submitted a letter which states that she has "no problem excepting [sic] this position however I have another OJI injury to lower extimity [sic] pending with Workers Comp. that doesn't allow me to walk from the parking lot to the door, from the door to the time clock and from the clock to my work areas at this time due to the injury claim #'s 122006610 and 122008527." Id. at third consecutive page.

18. The plaintiff did not work from December 12, 2002, through March 28, 2003. Id. at Ex. 2, 68:13-69:2.

19. On February 20, 2003, Chuck Mallicoat, a USPS Supervisor, held a Due Process Investigative Hearing with the plaintiff. Id. at Ex. 1, 54:21-61:17. Two other people, including

---

[3]The pages of the Response are not numbered. Therefore, I cite to the pages as they are numbered in the Court's docketing system.

a union steward, were present. Id. at 55:10-19. The purpose of the hearing was to give the plaintiff an opportunity to explain why her attendance had been irregular. Id. at 55:20-56:1.

20. At the hearing, the plaintiff stated that the only medical documentation she had given to the USPS to substantiate her left knee injury was from her August 1, 2002, examination with Dr. Jacobs. Id. at 57:8-59:18.

21. At the hearing, the plaintiff gave the hearing officer a Functional Capacity Evaluation dated February 6, 2003. Id. at Ex. 1, 58:14-59:12. The Functional Capacity Evaluation did not provide an assessment of her walking ability but did state that she could walk for five minutes at a slow pace and could tolerate seated positions. Id. at Ex. 18, second consecutive page.

22. The plaintiff admitted that she was aware that she had been placed on AWOL status since December 25, 2002, due to her failure to provide medical documentation for her claimed inability to return to work. Id. at Ex. 19, fourth consecutive page.

23. On March 12, 2003, the USPS sent the plaintiff a letter informing her that her Workers Compensation claim regarding her left knee was denied. Id. at Ex. 2, 41:6:22; Ex. 11. The letter advised the plaintiff that she was expected to resume the full duties of her position without restriction. Id. at Ex. 11. However, if she was unable to do so, she was given several options: she could apply for temporary light duty, permanent light duty, or disability retirement; or she could request accommodation through the District Reasonable Accommodation Committee. Id.

24. On April 2, 2003, the USPS notified the plaintiff in a Notice of Removal that she would be removed within 30 days for AWOL and Failure to Follow Instructions. Id. at Ex. 16.

The Notice states that the AWOL charge is based on the plaintiff's failure to provide acceptable documentation for her continued absence and the Failure to Follow Instructions charge is based on the plaintiff's failure to provide acceptable medical documentation for her continued absence after receiving written and verbal instructions to do so. Id. at first and second consecutive pages.

25. On April 16, 2003, the plaintiff went to the USPS and was given a Return to Work Packet. Id. at Ex. 2, 59:12-25.

25. The plaintiff visited her doctor, Dr. Hunter, on April 29, 2003. Id. at Ex. 2, 34:19-35:25. Dr. Hunter noted that the plaintiff could work with restrictions including sitting constantly for eight hours a day and walking intermittently for one hour a day. Id. at Ex. 20. On April 29, 2003, the plaintiff understood that she could walk intermittently for one hour. Id. at Ex. 1, 33:19-25.

26. The USPS records employees' absences on Form 3971. The plaintiff requested copies of her Form 3971 reports. She received copies of all requested forms in September 2003. Id. at Ex. 2, 91:20-92:18. The forms are for the period from March 31, 2003, to April 18, 2003. Id. at Ex. 24. The plaintiff was not prevented from filing her EEO complaint during the time she did not have all of her forms. Id. at Ex. 2, 65:13-15.

The plaintiff filed her Title VII Complaint on October 4, 2006 [Doc. #3] (the "Complaint"). In her Complaint, the plaintiff asserts that the USPS subjected her to retaliation

for prior EEO activity.[4]  Id.  She seeks reinstatement, id. at p. 6, and she estimates her damages at $50 million.  *Computation of Damages* [Doc. # 31], fourth consecutive page.

### III.  ANALYSIS

The plaintiff alleges that the defendant retaliated against her because she engaged in EEO activity after she was terminated in 1997.  Title VII prohibits retaliation against individuals who oppose discriminatory employment practices or participate in complaints or investigations of employment practices prohibited by title VII.  42 U.S.C. § 2000e-3(a).[5]  Where, as here, there is no direct evidence of retaliation, a claim of retaliation is analyzed under the burden-shifting

---

[4]I note that in his Motion, the defendant construes the Complaint to include claims for disparate treatment and disparate impact on the basis of race, gender, and disability.  The plaintiff has submitted her Complaint on the Court's form.  Although the plaintiff has checked the form's boxes which state "race," "sex," and "other--disability," the Complaint and the Response are directed solely at a claim of retaliation for engaging in prior EEO activity.  To the extent the plaintiff attempts to bring other claims, those claims are unintelligible and will not be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

[5] Specifically, Section 2000e-3(a) provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

framework announced in McDonnell Douglas Corp. V. Green, 411 U.S. 792, 802-04 (1973).

Stover v. Martinez, 382 F.3d 1064, 1070 (10th Cir. 2004):

> Following this framework, an employee must first present a prima facie case of retaliation, which then shifts the burden to the employer to produce a legitimate, nondiscriminatory justification for taking the disputed employment action. If the employer provides a legitimate, non-discriminatory justification for the action, the burden shifts back to the employee to provide evidence showing that the employer's proffered reason is a pretext for discrimination.

Id. at 1070-71.

To establish a *prima facie* case of retaliation, a plaintiff must establish that: (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. Sanchez v. Denver Public Schools, 164 F.3d 527, 533 (10th Cir. 1998). The plaintiff bears the burden of establishing the *prima facie* case. Id.

The parties do not dispute that the plaintiff engaged in protected opposition to discrimination after she was terminated in 1997. The defendant asserts that the plaintiff cannot establish the remaining two requirements.

The circuit court has stated the following with regard to the causal connection requirement:

> A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation. We have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a

>three-month period, standing alone, is insufficient to establish causation.

O'Neal v. Ferguson Const. Co., 237 F.3d 1248, 1253 (10th Cir. 2001) (internal quotations and citations omitted).

As to the requirement of an adverse employment action, the Supreme Court recently held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotations and citations omitted). "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. at 67.

The plaintiff alleges the following retaliatory acts: (1) in March 2001 she was placed in a job that was unsuitable because she has arthritic fingers; (2) in August 2002 she was documented as AWOL when she had to miss work for surgery on her wrist; (3) when she was absent for wrist surgery, the USPS adjusted her sick and annual leave without her knowledge and has never fully corrected the problem; (4) the USPS wrongfully documented that she was AWOL in December 2002 and terminated her employment; and (5) the USPS would not provide her with copies of 3971 Forms after she requested them several times. *Complaint*, pp. 3-4, 47.[6]

The plaintiff alleges that "the retaliation started the first day [she] stepped on the work room floor" after the EEOC ordered her reinstatement. *Complaint*, p. 3. She alleges that upon

---

[6]The plaintiff attaches numerous exhibits to the Complaint which are not labeled and not paginated. Therefore, when citing to the text of the Complaint or to the attached exhibits, I cite to the page number assigned by the Court's docketing system.

her return to the USPS on March 28, 2001, she was placed in a job that was not suited to her arthritic fingers and hands. Id. at pp. 14-15. She had to be examined by her doctor; she was forced to use all of her annual leave and most of her sick leave; she was erroneously documented as AWOL; and she had to file grievances before the situation was corrected. Id.

The plaintiff does not provide any competent evidence from which I can discern the circumstances surrounding her initial placement upon return to the USPS in March 2001. Indeed, it is impossible to determine whether the USPS had any knowledge of her arthritic condition prior to placing her in the allegedly unsuitable position. Therefore, to the extent the plaintiff is asserting that her initial placement in an unsuitable position constitutes retaliation, she has failed to meet her burden to establish that such placement was retaliatory in nature.

As to her allegations regarding the erroneous AWOL designation in August 2002; the subsequent adjustment of her payroll records; her second AWOL designation in December 2002; her termination; and the failure to provide her with copies of the Forms 3971, these events occurred more than one year after her return to the USPS on March 28, 2001. These events are remote in time and, without more, are insufficient to establish causation. O'Neal, 237 F.3d at 1253.

In addition, it is undisputed that the first AWOL letter was issued in error because a USPS employee failed to document that the plaintiff was taking leave under the FMLA and that her absence was excused under the FMLA through October 14, 2002, after she provided medical documentation. Although she alleges that the USPS still owes her money because it never fully corrected the mistakes in her payroll records, she does not provide any competent argument or evidence to support this allegation. Moreover, she has not provided any argument or evidence to

12

establish that the delay in obtaining the Forms 3971 caused her any injury or harm. Therefore, the plaintiff has not only failed to establish a causal connection between her EEO filing and these acts, she has also failed to establish that these acts constitute adverse employment actions.

The plaintiff has failed to establish a *prima facie* case of retaliation. Accordingly, I respectfully RECOMMEND that the Motion be GRANTED and that summary judgment enter in favor of the defendant.[7]

## IV. CONCLUSION

I respectfully RECOMMEND that Defendant's Motion for Summary Judgment [Doc. #32] be GRANTED and that summary judgment enter in favor of the defendant on all of the plaintiff's claims.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue

---

[7]The defendant asserts that the plaintiff "has alleged that four specific individuals discriminated against her: Gustavo Garza, Chuck Mallicoat, Rita Cairns, and Fred Sunday." *Motion*, p. 14, ¶ 56. The defendants do not provide any evidence to support this statement, and I do not find any evidence in the record to support a finding that the plaintiff limits the allegedly retaliatory behavior to these four individuals. The defendants then argue that three of these four individuals did not have knowledge of the plaintiff's initial EEO activity. Because the premise for this argument is unsupported by the record, I do not address it.

13

for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated July 30, 2008.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge