IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-01976-MSK-BNB

RHODORA L. BLANKS,

    Plaintiff,

v.

JOHN E. POTTER, Postmaster General of the United States,

    Defendant.

---

**OPINION AND ORDER ADOPTING RECOMMENDATION AND GRANTING
MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Objections **(# 55)** to the July 30, 2008 Report and Recommendation **(# 51)** of United States Magistrate Judge Boyd N. Boland that the Defendant's Motion for Summary Judgment **(# 32)** be granted.

## FACTS

According to the findings of fact in Judge Boland's Recommendation, the Plaintiff began her employment with the Postal Service in 1997. That same year, she was terminated from her position. She filed a charge of employment discrimination, contending that her termination was based on her race, and in December 2000, the Equal Employment Opportunity Commission agreed with the Plaintiff and directed the Postal Service to reinstate her.

The Plaintiff was reinstated to work in March 2001. Thereafter, she suffered a series of injuries and medical care that the Court will discuss *seriatim*, rather than chronologically.

In November 2001, she sustained a work-related injury to her right wrist, for which she applied and received Worker's Compensation. In August 2002, she received treatment, including surgery, for her wrist injury from a Dr. Oster. Dr. Oster released the Plaintiff to return to work as of August 27, 2002, subject to limitations on the use of her wrist and lifting and carrying in excess of one pound (later increased to five pounds in December 2002).

In February 2002, she sustained a work-related injury to her left elbow. Again, she applied for and received Worker's Compensation. The Plaintiff received treatment for her elbow injury from a Dr. Danahey, and on October 23, 2002, Dr. Danahey released the Plaintiff to return to work with no restrictions. Dr. Danahey's notes at this time indicate that the Plaintiff did not have any pain in her elbow, and had remained out of work by choice,[1] not because of any medical impairment.

On August 1, 2002, the Plaintiff filed an application for Worker's Compensation relating to an injury she sustained to her left knee. She was examined by a Dr. Jacobs, and Dr. Jacobs released the Plaintiff to return to work as of August 6, 2006, subject to restrictions limiting her sitting to 8 hours intermittently, standing to 2 hours intermittently, and walking to 1 hour intermittently. Dr. Jacobs specifically found that the Plaintiff could perform light desk work.

On December 13, 2002, the Postal Service offered the Plaintiff a light duty position sorting time cards in the Attendance Control Office. The job entailed 6-8 hours of intermittent standing and walking, 8 hours of intermittently lifting 0-5 pounds, 2-4 hours of intermittent

---

[1] Inferentially, the Court assumes that the Plaintiff was absent from work for significant periods of time incident to many of these injuries. The record is not entirely clear as to when the Plaintiff started and stopped working due to each incident, but the precise dates on which she did and did not work are not critical to the determination of the issues herein.

bending, and 1 hour of intermittent kneeling.  The Plaintiff declined the job offer on December 19, 2002, stating that her Worker's Compensation claim for the August 2002 knee injury remained pending, that she could not stand or walk for any length of time, and that she was unable to kneel at all.  She also stated that the position amounted to a decrease in her pay scale.

On December 25, 2002, the Postal Service placed the Plaintiff on AWOL status, as she had not presented medical documentation justifying her inability to return to work.

On January 16, 2003, the Postal Service offered the Plaintiff another light duty position, a "seated position in which the employee monitors employees entering the facility."  The position required some lifting of 0-5 pounds, some intermittent twisting, and some intermittent carrying.  Dr. Oster had reviewed the position's description and indicated his approval of it in light of the Plaintiff's injury.  The Plaintiff responded to the offer stating that "I have no problem [accepting] this position," but that "I have another OJI injury to lower extremity pending with Worker's Comp. that doesn't allow me to walk from the parking lot to the door, from the door to the time clock and from the clock to my work areas at this time."

On February 20, 2003, the Postal Service conducted a Due Process hearing to inquire into the irregularity of the Plaintiff's attendance.  At the hearing, the Plaintiff stated that the only evidence she had to substantiate the left knee injury from August 2002 – the injury based on which the Plaintiff denied the December 2002 job offer – was the August 1, 2002 examination by Dr. Jacobs.  The Plaintiff also provided the Postal Service with a Functional Capacity Evaluation that had been rendered as of February 6, 2003.  That evaluation stated that the Plaintiff could walk for five minutes at a time at a slow pace, and could tolerate seated positions.  The Plaintiff acknowledged at the hearing that she was aware of her AWOL status.

On March 12, 2003, the Postal Service informed the Plaintiff that the Worker's Compensation application relating to her August 2002 knee injury was denied, and that she was expected to return to work and resume her full work duties without restriction. The Postal Service advised that if she could not return to regular duty, she could apply for a light duty position, request a reasonable accommodation, or apply for disability retirement.

On April 2, 2003, the Postal Service issued a Notice of Removal, indicating that it intended to terminate her employment within 30 days. The grounds for the removal were the Plaintiff's continued AWOL status and her failure to follow instructions to produce medical documentation substantiating her continued absence. On April 29, 2003, the Plaintiff was examined by a Dr. Hunter, who found that the Plaintiff could return to work with restrictions that included 8 hours of sitting per day and intermittent walking of up to 1 hour per day. Although the Recommendation does not specifically note, the Plaintiff was terminated in May 2003.

The Plaintiff then commenced this action *pro se*, alleging retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3. The Complaint makes some reference to additional theories of discrimination, including race, sex, and disability-based discrimination. However, the Magistrate Judge found that such claims were unintelligible and declined to consider them.

The Defendant moved **(# 32)** for summary judgment, arguing that the Plaintiff cannot make a *prima facie* showing of retaliation because: (i) certain actions she contends were adverse employment actions are insufficient; and (ii) she cannot show a causal connection between her prior 1997 complaint of race discrimination and her termination in 2003. In addition, the

4

Defendant arguments that the Postal Service had legitimate non-discriminatory reasons for its actions that the Plaintiff could not show to be pretextual.

Magistrate Judge Boland's Recommendation is that the Motion for Summary Judgment be granted. To establish a *prima facie* case of retaliation, the Plaintiff must show that: (i) she engaged in protected activity; (ii) she suffered an adverse employment action; and (iii) there is a causal connection between the protected activity and the adverse action. *Metzler v. Fed. Home Loan Bank of Topeka,* 464 F.3d 1164, 1171 (10th Cir. 2006). Specifically, the Magistrate Judge found that it was undisputed that the Plaintiff had engaged in protected activity in 1997, which resulted in her reinstatement in March 2001. Next, the Magistrate Judge found that the Plaintiff had identified five alleged adverse employment actions: (i) that her initial assignment upon reinstatement was unsuitable in light of her documented case of arthritis; (ii) that the Postal Service mistakenly designated her as AWOL for a short period of time in August 2002 before correcting the error; (iii) that the Postal Service adjusted her leave balances without notice in order to correct the August 2002 AWOL issue; (iv) that her designation as AWOL in December 2002 and her ultimate termination were unwarranted; and (v) that the Postal Service refused to provide her with attendance records upon her request. The Magistrate Judge found that, with respect to her initial job assignment upon reinstatement, the Plaintiff failed to come forward with evidence that established that the Postal Service was aware of her arthritic condition when it placed her in the assignment. With respect to the AWOL designation in August 2002 and the failure to supply the attendance forms, the Magistrate Judge found that the Plaintiff had not shown that she suffered any injury as a result of these actions, and thus, she failed to show that the actions were adverse. With respect to the August 2002 AWOL designation, the adjustment

of leave balances, the December 2002 AWOL designation and termination, and the denial of attendance records, the Magistrate Judge further found that these events occurred more than a year after the Plaintiff's reinstatement, and that in the absence of additional evidence of causation, the Plaintiff had not established a causal connection between her protected activity and these actions.

On August 11, 2008, the Plaintiff filed timely Objections **(# 55)** to the Recommendation. Specifically, she contends that: (i) with respect to the contention that her initial assignment upon reinstatement was unsuitable, she states that the Postal Service agreed to give her a Career Mail Processor position, and cites to a "Welcome to the Postal Service" letter of March 14, 2001; (ii) with respect to the August 2002 AWOL designation, she contends that she "felt it was a problem when her requested leave without pay (LWOP) was prepared in advance," that the form correcting the mistake reflects LWOP instead of the Plaintiff's use of sick leave as she requested, and that the Plaintiff's October 31, 2002 paycheck was in error, resulting in a loss to her of $538.60; (iii) the Magistrate Judge's finding that the Plaintiff was released to work by Dr. Oster on August 27, 2002 is erroneous, and that Dr. Oster merely gave her a copy of a Work Status Report at that time; (iv) that the Notice of Removal letter of April 2, 2003 bears the same date as a letter relating to her Worker's Compensation claim that gives her 15 days to return to work, and that on April 7, 2003, the Plaintiff tendered a letter to the Postal Service from her physical therapist but the Postal Service did not stamp the letter received until May 1, 2003; (v) that the Plaintiff did not receive the March 12, 2003 Worker's Compensation denial letter until April 8, 2003, and that on April 14, 2003, the Plaintiff responded to the Postal Service that she would report to work on April 16, 2003; (vi) that when she reported to work on April 16, 2003 and

6

requested a wheelchair, she was given a "Return to Work packet" that required her to obtain more medical records, which she returned to the Postal Service on April 29, 2003, and that she "should have been contacted instead [of] terminated." She concludes her Objections by stating that "The agency is proven to falsif[y] plaintiff's documents and harass her every way possible. They gave me the return to work packet and refused to honor it."

## ANALYSIS

### A. Standard of review

In considering the Plaintiff's filings, the Court is mindful of her *pro se* status, and accordingly, reads her pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in the Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve the Plaintiff of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

Because the Recommendation concerns a dispositive motion, the Court reviews *de novo* those portions of the Recommendation to which the Plaintiff objects. Fed. R. Civ. P. 72(b); *Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000). As to the remainder of the Recommendation, to which no specific objections are filed, the Court applies whatever standard of review it deems appropriate. *Summers v. State of Utah*, 927 F.2d 1165, 1167-68 (10th Cir.

1991). Here, the Court has also reviewed the unobjected-to portions of the Recommendation under the otherwise applicable *de novo* standard.

**B. Specific Objections**

At the outset, the Court notes that, in general, the Plaintiff's Objections to the Magistrate Judge's Recommendation dispute certain factual findings by the Magistrate Judge or amplify certain factual issues. However, the Plaintiff does not directly respond to the Magistrate Judge's major conclusion of law – that she fails to show a causal connection between her protected activity and any cognizable adverse employment action. Nevertheless, in deference to her *pro se* status and in order to ensure that her right to proceed to trial is fully protected, the Court will review the Plaintiff's factual objections in some detail and reexamine the Magistrate Judge's legal conclusions where necessary.

To review the legal standards governing an adverse action, the Plaintiff is required to establish a *prima facie* case showing both that she suffered an adverse employment action and that there is a causal connection between that adverse action and her protected activity of complaining of discrimination in 1997 and her reinstatement in 2001.[2] *Metzler*, *supra*. For purposes of a retaliation claim, an "adverse employment action" must be one that "might have dissuaded a reasonable employee from" engaging in protected activity. *Burlington Northern and Santa Fe RR Co. v. White*, 548 U.S. 53, 67-68 (2006). The act must be of a type that would be likely to "deter victims of discrimination from complaining," and must be something more than

---

[2]The Court assumes, without necessarily finding, that the implementation of a remedy for the Plaintiff's complaint of discrimination can be deemed to be part of the protected conduct in this case. *But see Proctor v. United Parcel Service*, 502 F.3d 1200, 1209 (10th Cir. 2007) (rejecting argument that "protected activity" extended from filing of charge to the date the anti-discrimination agency issued its findings).

8

"normally petty slights, minor annoyances, and simple lack of good manners." *Id.* at 68. The standard is an objective one that looks not to whether the Plaintiff herself subjectively found the action adverse, but whether a reasonable employee would have done so. *Id.* at 68-69. To show the requisite causal connection between the adverse action and the protected activity, the Plaintiff can rely solely on temporal proximity if the adverse action followed shortly after the protected activity. *See generally Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) (passage of three months between protected conduct and adverse action insufficient, of itself, to show causation). However, if too much time elapsed, the Plaintiff must come forward with additional evidence that, taken together, would demonstrate a causal connection. *Id.* at 1198-99, *citing Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996) (showing a "pattern" of retaliatory actions commencing soon after protected activity but culminating in adverse action later may be sufficient); *Proctor*, 502 F.3d at 1209 (evidence of pretextual justification tendered by employer might demonstrate causal connection).

In light of these standards, the Court turns to the Plaintiff's specific objections. First, the Court examines the Plaintiff's objection to the Magistrate Judge's finding concerning her initial assignment. The Magistrate Judge found that the Plaintiff had not adduced "any competent evidence from which I can discern the circumstances surrounding her initial placement," much less evidence that the Postal Service "had any knowledge of her arthritic condition." The Plaintiff's Objection points only to a "Welcome to the U.S. Postal Service" letter, found at Docket # 45-2, p. 3. That letter simply confirms the Plaintiff's appointment as a "Full-Time Unassigned Regular Mail Processor." It is difficult to conceive of how this letter advances the Plaintiff's argument that her initial assignment was somehow retaliatory. The Plaintiff appears

9

to contend that "she was not granted" the position referred to in the letter, but the Court is aware of no evidence in the record that would establish this contention. Moreover, it is not apparent to the Court how this issue relates in any way to any arthritic condition claimed by the Plaintiff, nor demonstrate the Postal Service's knowledge of such a condition. Accordingly, the Court finds upon *de novo* review that the Plaintiff has not shown that her initial assignment upon reinstatement amounts to an adverse employment action.

Next, the Plaintiff objects to findings by the Magistrate Judge regarding the Postal Service's mistake in designating her as AWOL in August 2002, and the subsequent correction of that mistake. The Magistrate Judge found that it was undisputed that the August 2002 AWOL designation was the result of a mistake in accounting for the Plaintiff being on approved FMLA leave through October 2002. The Magistrate Judge found that the Plaintiff did not point to competent evidence to support her contention that "the USPS still owes her money because it never fully corrected the mistakes in her payroll records." In addition, the Magistrate Judge found that this event, occurring more than a year after her reinstatement in March 2001, was not causally connected to her protected activity. In her Objections, the Plaintiff first correctly notes that her leave through October 2002 had been approved in advance. *See Docket* # 45-2 at 26. The remainder of her objections on this point are somewhat hard to ascertain. On the one hand, the Plaintiff's objections state that she "requested LWOP changed to sick leave." On the other hand, evidence in the record indicates that the Plaintiff wrote to the Postal Service in October 2002, objecting to the fact that the Postal Service charged her with 232 hours of sick leave for the period of FMLA leave in August - October 2002, and instead requested that that time be accounted for with 80 hours of sick leave and the remainder of the time designated as leave

10

without pay.  *See Docket* # 45-2 at 30.  Finally, she contends that her October 31, 2002 paycheck was in error because of the improper designation of sick leave.  Given the inconsistent positions taken by the Plaintiff as to whether the August - October 2002 FMLA leave should have been treated as sick leave or leave without pay, the Court cannot find that the Plaintiff has come forward with evidence that would suggest that the Postal Service's initial mistake in designating her as AWOL in August 2002 remains uncorrected, or that it had any adverse consequences to the Plaintiff.  Moreover, the Court agrees with the Magistrate Judge that the mistaken AWOL designation in August 2002 is too remote in time from the Plaintiff's protected activity, and the Plaintiff has not come forward with any other evidence that would establish a causal connection between the two events.

Next, the Plaintiff objects to the Magistrate Judge's finding that Dr. Oster released her to return to work on August 27, 2002.  The Plaintiff contends that she was not released to return, and was only given a Work Status Report.  This is a purely semantic distinction.  The Work Status Report in the record states "Recommended Restrictions" and adds that "If the above instructions cannot be met, the patient must be off work."  *Docket* # 45-2 at 29.  The necessary implication is that if the listed restrictions <u>can</u> be met, the Plaintiff could return to work.  Thus, the Court finds no basis to disagree with the Magistrate Judge's factual finding on this point.

The Plaintiff also objects to certain factual findings by the Magistrate Judge relating to the events occurring after the Postal Service issued the Notice of Removal on April 2, 2003.  Summarized, the Plaintiff alleges that she received inconsistent advice – the Notice of Removal informing her of her impending termination and an April 5, 2003 letter relating to her Worker's Compensation claim allowing her to return within 15 days.  She appears to allege some sort of

11

mishandling of an April 7, 2003 note from her physical therapist attesting to her inability to walk, in that the note was received by certain units within the Postal Service on or about April 7, 2003, but not received by the Health Unit until May 1, 2003. *Docket #* 45-2 at 27.

The Court rejects any argument based on an inconsistency between the Notice of Removal and the Worker's Compensation letter. As best the Court can tell, the Worker's Compensation letter was not included in the Plaintiff's summary judgment response, nor was it attached to the Plaintiff's Objections. The Plaintiff's Objections "request the right to bring [the Worker's Compensation] letter forward on her response motion." Despite being *pro se*, the Plaintiff is obligated to respond to a summary judgment motion with competent evidence, not conclusory assertions as to what she could or would produce at some later date. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Because the Worker's Compensation letter is not part of the record, the Court disregards any representations by the Plaintiff as to what it might say.

As to the alleged mishandling of her therapist's April 7, 2003 note, the Court is unable to conclude from the evidence that any such mishandling occurred. The Plaintiff ascribes some significance to the fact that certain units within the Postal Service received the note earlier or later, but nothing in the record explains that significance. Without some evidence explaining the significance of the "Health Unit" or the "Inaco Unit" or the "Limited Light Duty P & DC" endorsements on the note, the Court is at a loss to say that a certain unit's receipt or non-receipt of the note on a certain date is probative of any material fact. The Court notes that the Magistrate Judge's Recommendation makes no mention of the therapist's note, but assumes that the Magistrate Judge's core finding – that the events surrounding the Plaintiff's termination in

12

April and May 2003 were not causally connected to her protected activity in 2001 – would not be affected by the therapist's note.

This Court agrees. The Plaintiff's termination occurred nearly two years after the Plaintiff's protected activity, a period far too attenuated to offer any meaningful evidence of causation. Arguably, evidence that an employer deviated from records-handling procedures or ignored evidence that had been presented to it might, in some circumstances, permit an inference of retaliatory causation, but the record here is far too skeletal to permit such an inference. Even assuming – although the Court does not find – that the Postal Service mishandled the therapist's note, the note adds little to the record that was not already present. The therapist merely requests that the Plaintiff be provided with a wheelchair to help her travel from the parking lot to her desk. This is similar to the Plaintiff's assertion, tendered in January 2003 in response to the modified job offer, that she could not walk from the parking lot to her desk. It is apparent that the Postal Service either rejected this contention outright or found that it did not comport with the existing medical evidence. The Court can hardly find that the Plaintiff's submission of medical support for this contention more than 2½ months after she first asserted it calls the Postal Service's refusal to defer to the therapist's note into doubt. Accordingly, upon *de novo* review, the Court nevertheless agrees with the Magistrate Judge that there is inadequate evidence in the record to demonstrate a causal connection between the Plaintiff's protected activity and her termination in April and May 2003.

Finally, the Plaintiff's Objections recite certain facts not found by the Magistrate Judge regarding her attempt to return to work on April 16, 2003. She contends that she sought to report for duty, but was instead given additional medical forms to fill out. She contends that she

13

returned the forms to the Postal Service on April 29, 2003, but was nevertheless terminated a few days later. Even assuming this is true, the record reflects that the Postal Service had already issued the Notice of Removal by this point, indicating its intention to terminate her employment. The mere fact that the Plaintiff sought to produce additional medical evidence after the Postal Service had already notified her that she was to be terminated does not, individually or in conjunction with the remaining evidence in the record, demonstrate that the decision to terminate her was causally connected to her protected activity years earlier.

## CONCLUSION

Having considered all of the Plaintiff's Objections, and reviewed the entirety of the Recommendation *de novo*, the Court agrees with the Magistrate Judge's conclusion that the Plaintiff has failed to come forward with evidence sufficient to demonstrate a *prima facie* case of retaliation. Accordingly, the Plaintiff's Objections **(# 55)** are **OVERRULED**, and the Court **ADOPTS** the Recommendation **(# 51)**. The Defendant's Motion for Summary Judgment **(# 32)** is **GRANTED**. Judgment shall enter in favor of the Defendant.

Dated this 26th day of August, 2008

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge